# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEY CRISOSTOMO, | ) |
| Plaintiff, | ) ) ) |
| | ) 16 C 6406 |
| v. | ) ) Judge John Z. Lee |
| TRACY L. SCHNEIDER-KIDAN and ADAM KIDAN, | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Josey Crisostomo ("Plaintiff") brings suit against Defendants Tracy Schneider-Kidan ("Schneider-Kidan") and Adam Kidan ("Kidan"), both officers of Chartwell Staffing Services, Inc. ("Chartwell"). Plaintiff's claims arise under the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115, *et seq*. ("IWPCA"). He alleges that Defendants knowingly failed to properly compensate him in accordance with the parties' employment agreement. He further alleges that Defendants unlawfully retaliated against him by discharging him for complaining about Defendants' failure to properly compensate him.

Defendants have moved to dismiss the First Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2). Alternatively, Defendants argue the First Amended Complaint should be dismissed for failing to state a claim under Rule 12(b)(6). For the reasons stated below, Defendants' motion [22] is denied.

## Factual Background

Plaintiff is a resident of Naperville, Illinois, and was employed by Chartwell as an Executive Vice President. 1st Am. Compl. ¶ 3, ECF No. 1. Plaintiff worked at Chartwell's Lombard, Illinois location. *Id.* Chartwell provides staffing services nationwide with its

corporate headquarters located in Pennsylvania. *Id.* ¶ 6. During the period relevant to Plaintiff's claims, Schneider-Kidan was an owner and the CEO of Chartwell and was involved in the day-to-day operations of the company. *Id.* ¶ 4. Kidan was an owner and the Chairman of Chartwell and was also involved in the day-to-day operations of the company. *Id.* ¶ 5.

In March 2015, at Chartwell's Lombard, Illinois office, Kidan told Plaintiff that he intended to promote Plaintiff to Executive Vice President, increase his salary to $180,000, and increase his commissions as well. *Id.* ¶ 7. On April 20, 2015, the parties finalized an employment agreement which included a base salary of $180,000 per annum, 1.25% commission of gross revenue for sales personally generated, 0.5% commission of gross revenue for accounts that Plaintiff supervised, as well as 20% of the net profits of the offices and accounts Plaintiff supervised on a quarterly basis. *Id.* ¶ 8; *see id.*, Ex. A.

In August 2015, Plaintiff complained to Kidan that he was not being paid the proper share of net profits or commissions as set forth in the employment agreement. *Id.* ¶ 12. Kidan responded by assuring Plaintiff that the issue would be fixed. *Id.* When Plaintiff again complained to Kiden in November 2015, Kidan told Plaintiff he would look into it, but did not do so. *Id.* ¶ 14. This pattern continued until March 31, 2016, when Plaintiff complained one last time to Kidan about the outstanding compensation. *Id.* ¶ 17. Kidan responded by asking if Plaintiff wanted "today to be his last day." *Id.* Plaintiff was terminated on April 4, 2016. *Id.* ¶ 18.

## **Legal Standard**

A court that lacks personal jurisdiction over a defendant must dismiss the case as to that party. *See* Fed. R. Civ. P. 12(b)(2). If a defendant moves to dismiss pursuant to Rule 12(b)(2), it places the burden on the plaintiff to demonstrate the court has personal jurisdiction over the

defendant. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). In making this determination, the court will "'read the complaint liberally, in its entirety, and with every inference drawn in favor of'" the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983)). "The precise nature of the plaintiff's burden depends upon whether an evidentiary hearing has been held." *Purdue*, 338 F.3d at 782. When there is no dispute of material fact and a court rules solely based on the submission of written materials, the plaintiff "'need only make out a *prima facie* case of personal jurisdiction.'" *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). In making this determination, the court can consider affidavits and other supporting materials. *See id.* The court must resolve any conflicts in the affidavits and supporting materials in the plaintiff's favor. *Id.* at 782–83.

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Bell v. City of Country Club Hills*, 841 F.3d 713, 716 (7th Cir. 2016). Under the federal pleading standards, "[a] plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotation marks omitted); Fed R. Civ. P. 8(a)(2). When considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[ ] as true all well-pleaded facts alleged, and draw[ ] all possible inferences in [the plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

Additionally, a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To have facial plausibility, a

3

claim must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Plausibility, however, "does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

## Analysis

### I. Personal Jurisdiction

Defendants argue that personal jurisdiction is lacking for two reasons. First, both Defendants argue that the fiduciary-shield doctrine precludes the Court from exercising personal jurisdiction over them. In addition, Schneider-Kidan argues that she lacks sufficient minimum contacts with Illinois to confer personal jurisdiction. In particular, she asserts that Plaintiff has not alleged that she purposefully directed activity at Illinois or purposefully availed herself of the privilege of doing business in Illinois such that she could have reasonably anticipated being subject to the Court's jurisdiction. The Court analyzes each argument in turn.

#### A. The Fiduciary-Shield Doctrine

According to Defendants, the fiduciary-shield doctrine precludes the exercise of personal jurisdiction because any contact Defendants had with Illinois were by way of actions taken in a representative capacity on behalf of Chartwell. In response, Plaintiff contends that the fiduciary-shield doctrine does not apply to high-ranking corporate officers and shareholders such as Defendants.

As a general matter, the fiduciary-shield doctrine prevents courts from asserting jurisdiction over an individual based on acts taken by that person merely as an employee at the

4

behest of his or her employer. *Rollins v. Ellwood*, 565 N.E.2d 1302, 1318 (Ill. 1990). Two exceptions apply: (1) actions motivated by an individual's personal interests, and (2) actions within an individual's discretion. *See Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994); *Leong v. SAP Am., Inc.*, 901 F. Supp. 2d 1058, 1064 (N.D. Ill. 2012). That said, the doctrine does not mandate dismissal, and whether to apply the fiduciary-shield doctrine is within a court's discretion. *Rice*, 38 F.3d at 914; *Levin v. Posen Found.*, 62 F. Supp. 3d 733, 741 (N.D. Ill. 2014).

Courts have generally refused to apply the fiduciary-shield doctrine to individuals who are high-ranking officers and owners of a company, reasoning that such individuals enjoy discretion and are motivated by personal interests. *See McGreal v. Semke*, 836 F. Supp. 2d 735, 740–41 (N.D. Ill. 2011) (holding fiduciary-shield doctrine inapplicable because defendant, as president and shareholder, had a direct and personal interest in the financial expenditures and well-being of the company); *Farmer v. DirectSat USA, LLC,* No. 08 C 3962, 2010 WL 380697, at *3–4 (N.D. Ill. Jan. 28, 2010) (finding that allegations that defendants had the ability to hire and fire employees, direct and supervise the work of employees, and make decisions regarding wage and hour classifications and employee compensation were sufficient to deprive them of the fiduciary shield); *Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l, Inc.,* No. 01 C 6985, 2002 WL 31427021, at *3–4 (N.D. Ill. Oct. 30, 2002) (declining to apply fiduciary-shield doctrine where defendant was the CEO and a shareholder of the company); *see also Leong*, 901 F. Supp. 2d at 1065 (holding that the fiduciary-shield doctrine did not apply because plaintiff made a *prima facie* showing that defendant had discretion over the allegedly unlawful actions).

Here, Plaintiff alleges that Defendant Schneider-Kidan was an owner and the CEO of Chartwell and that Defendant Kidan was an owner and the Chairman of Chartwell. Am. Compl.

¶¶ 4–5. To that end, Plaintiff alleges that Defendants were involved in day-to-day business operations with the discretion to hire and fire, direct the work of employees, and make decisions regarding employee compensation and capital expenditures. *Id.* Accordingly, each had discretion to take the actions that impacted Plaintiff. *Id.* Finally, as owners, Defendants had a direct financial stake in the company's health, resulting in both a personal and corporate benefit. *Id.* Based upon these factors, the Court finds that the fiduciary-shield doctrine does not apply.

The cases upon which Defendants rely are unavailing. Defendants attempt to analogize to *Kouakou v. Sutton Funding, LLC*, No. 09 C 7132, 2012 WL 581179 (N.D. Ill. Feb. 22, 2012), contending that Plaintiff has not alleged any facts that support the notion that Defendants were acting in furtherance of their own self-interest. Reply at 4, ECF No. 28 (citing *Kouakou*, 2012 WL 581179, at *3–4). But the plaintiffs in *Kouakou* did not allege any acts personally taken by the defendants, nor did they allege that the defendants would personally gain from their actions or had the requisite ownership interest in the entities at issue. *Id.* at *4. By contrast, here, Plaintiff alleges that Defendants themselves engaged in the challenged acts against the Plaintiff and that Defendants had discretion regarding those acts.

Defendants also read too much into *Petrich v. MCY Music World, Inc.*, 862 N.E.2d 1171 (Ill. App. Ct. 2007). They assert that *Petrich* establishes a rule that the fiduciary-shield doctrine precludes the court from exercising jurisdiction over defendants that take actions as shareholders on behalf of corporations. Reply at 4 (citing *Petrich*, 862 N.E.2d at 1183). But *Petrich* does not stand for the broad proposition that shareholders are always protected by the fiduciary-shield doctrine. Rather, like the other cases cited here, the *Petrich* court focused on the nature and extent of the defendants' particular conduct. *Petrich*, 862 N.E.2d at 1183.

Because Defendants are high-ranking officers and owners of Chartwell and had discretion in their actions involving the Plaintiff, the Court finds the fiduciary-shield doctrine inapplicable. Accordingly, the Court denies Defendants' motion to dismiss based upon the fiduciary-shield doctrine.

### B. Schneider-Kidan's Contacts with Illinois

Schneider-Kidan argues that Plaintiff has not alleged minimum contacts sufficient to subject her to personal jurisdiction in Illinois. To determine whether personal jurisdiction exists over Schneider-Kidan in Illinois, the Court considers the Illinois long-arm statute, the Illinois constitution, and the federal constitution. *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). The Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted by the United States Constitution, which causes the state statutory and federal constitutional inquiries to merge. *See* 735 Ill. Comp. Stat. 5/2-209(c); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). In such circumstances, a court will exercise personal jurisdiction over a defendant "if the defendant had 'certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)) (internal quotation marks omitted).

There are two types of personal jurisdiction: general and specific. Plaintiff here relies on specific jurisdiction, which asks whether "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702. To determine whether a defendant purposefully directed

his activities at the forum state, courts consider whether the defendant engaged in (1) intentional conduct, (2) expressly aimed at the forum state, (3) with the knowledge that such conduct would injure the plaintiff in the forum state. *Tamburo*, 601 F.3d at 703. Furthermore, the exercise of specific jurisdiction must comport with traditional notions of fair play and substantial justice, which takes into account considerations such as the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

In this case, Plaintiff alleges that Schneider-Kidan is the CEO and owner of Chartwell, which had at least one office in Illinois. Am. Compl. ¶ 4. He further states that she is registered with the State of Illinois Secretary of State as the president and owner of Chartwell. Resp. at 9, ECF No. 27.[1] He claims that Schneider-Kidan was involved in the day-to-day operations of Chartwell, "including payroll accounts and the decisions regarding employee compensation of Plaintiff." *Id.* ¶ 4. Furthermore, Schneider-Kidan was involved in "devising, directing, implementing and supervising" Chartwell's compensation practices, which "includ[ed] the decision not to pay Plaintiff his earned wages and commission." *Id.*

Additionally, the employment agreement in question—which Schneider-Kidan, in her capacity as CEO, was responsible for devising—specifically acknowledges that Plaintiff resides in Naperville, Illinois. *Id.*, Ex. A. Thus, Schneider-Kidan was aware that her actions would directly affect a citizen of Illinois. What is more, the employment agreement obligates Chartwell

---

[1] The Court may take judicial notice of matters of public record, including records maintained by the Illinois Secretary of State. *See Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012) (stating that, on a motion to dismiss, "[a] court may take judicial notice of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned"); *Trent v. Ohio Nat'l Life Ins. Co.*, No. CIV. 10-715-GPM, 2010 WL 4385496, at *3 (S.D. Ill. Oct. 28, 2010) (taking judicial notice of online records of corporations maintained by the Illinois Secretary of State).

to pay Plaintiff "20% of the net profits" of the accounts that he oversees out of the Lombard, Illinois, office. *Id.* Finally, the agreement states it "shall be interpreted and construed according to the law of [Illinois]," and subjects Plaintiff to a noncompetition clause which covers "the geographic area where the employee conducted business," which would include Illinois. *Id.*

These allegations are sufficient to establish that Schneider-Kidan has purposefully availed herself of the privilege of conducting business in Illinois, and that her conduct caused Plaintiff's purported injury in Illinois. *Tamburo*, 601 F.3d at 706 (holding that "although [defendants] acted from points outside the forum state, [they] specifically aimed their tortious conduct at [plaintiff] and his business in Illinois with the knowledge that he lived, worked, and would suffer the 'brunt of the injury' there," and were therefore subject to personal jurisdiction in Illinois); *Barker v. Atl. Pac. Lines*, No. 13 C 1272, 2013 WL 4401382, at *4 (N.D. Ill. Aug. 14, 2013) (concluding that a New Jersey citizen was amenable to jurisdiction in Illinois because the plaintiff performed work in Illinois and the defendant was complicit in causing the plaintiff not to receive compensation in Illinois); *Farmer*, 2010 WL 380697, at *9 (determining that instituting wage and hour policies and establishing an Illinois office were sufficient to confer specific personal jurisdiction).[2]

Additionally, Illinois has a strong interest in resolving this dispute because the injury occurred in Illinois, to a resident employed in Illinois, by a business registered with the Illinois

---

[2] The Court notes that the facts surrounding the employment agreement likely bring defendants under two other provisions of the Illinois long-arm statute: transacting business in Illinois under § 5/2-209(a)(1) and execution of a contract substantially connected with the state under § 5/2-209(a)(7). 735 Ill. Comp. Stat. 5/2-209(a)(1), 5/2-209(a)(7); *see E.A. Cox Co. v. Rd. Savers Int'l Corp.*, 648 N.E.2d 271, 276 (Ill. App. Ct. 1995) (holding that because the defendant entered into an agreement with an Illinois resident, the agreement provided for partial performance by the defendant in Illinois, and the defendant's breach was based on activity on the part of the defendant in Illinois, the plaintiff pleaded sufficient facts for the court to exercise personal jurisdiction under § 2-209(a)(1) or § 2-209(a)(7)).

Secretary of State. Furthermore, Plaintiff, as a resident of Illinois, has an interest in litigating this case in his home state. Accordingly, requiring Schneider-Kidan to litigate in this forum will not offend traditional notions of fair play and substantial justice.

For these reasons, Schneider-Kidan's motion to dismiss for lack of personal jurisdiction is denied.[3]

## II.  Rule 12(b)(6): Defendants as "Employers" Under the IWPCA

### A.  Chartwell as an Employer "in this State"

Defendants also argue the case should be dismissed under Rule 12(b)(6). Specifically, Defendants contend that they are not "employers" under the IWPCA, because they "are not located in, citizens or residents of Illinois". Defs.' Mem. Supp. Mot. Dismiss 7, ECF No. 23. But this misses the point. Plaintiff's complaint, properly construed, does not allege that he was an employee of Kidan and Schneider-Kidan, but that he was an employee of Chartwell. After all, the employment agreement at the center of this dispute is one between Plaintiff and Chartwell, not Plaintiff and the individual Defendants. *See* Am. Compl., Ex. A.[4] Accordingly,

---

[3]  While Defendants have not explicitly argued that the Court lacks personal jurisdiction over Schneider-Kidan with regard to Plaintiff's retaliation claim, the Court is satisfied that it can exercise personal jurisdiction in relation to this claim as well. Plaintiff alleges that on March 31, 2016, he verbally complained regarding unpaid compensation to Defendants. Am. Compl. ¶¶ 17, 31. He further alleges that Defendants terminated him from his position as Executive Vice President four days later in retaliation for his complaints. *Id.* ¶¶ 18–19, 31. Based on these allegations, Plaintiff has sufficiently pleaded that Schneider-Kidan took purposeful action directed at Plaintiff in Illinois that injured him here, and for the reasons stated above, it would be fair and just to exercise personal jurisdiction over her in relation to Plaintiff's retaliation claim.

[4]  Admittedly, the allegations in the Amended Complaint obscure this point. But, where the allegations in a complaint are at odds with an exhibit attached thereto, it is the exhibit that controls. *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006) ("[W]e will consider the exhibits attached to a complaint, but, where an exhibit conflicts with the allegations of the complaint, the exhibit typically controls.").

the question is whether Chartwell, a foreign corporation, is an "employer" for the purposes of the IWPCA.[5]

The IWPCA applies to "employers and employees in this State." 820 Ill Comp. Stat. 115/1. Unfortunately, the statute does not define what it means to be an employer "in this State," and the Supreme Court of Illinois has not spoken on the issue.[6] Some guidance, however, can be gleaned from the Illinois appellate courts.

We start with *Liaquat Khan v. Van Remmen, Inc.* 756 N.E.2d 902 (Ill. App. Ct. 2001). There, an Illinois resident brought an action against an out-of-state employer and its nonresident president under the IWPCA. *Id.* at 912–13. The plaintiff did not allege that the defendants had any physical presence in Illinois, but argued nonetheless that defendants were "Illinois employers." *Id.* at 913. An Illinois appellate court held that the defendants were not Illinois employers, but expressly declined to "create an all-encompassing definition of 'employers in this State,'" limiting its holding to the facts of that case. *Id.*

The Illinois appellate court next addressed the issue more than ten years later in *Elsener v. Brown*, 996 N.E.2d 84, 99 (Ill. App. Ct. 2013). In that case, the plaintiff had sued the CEO of a parent company for causing his employer to withhold wages in violation of an employment

---

[5] If Chartwell qualifies as an "employer" under the IWPCA, then whatever claims Plaintiff may have against Kidan and Schneider-Kidan arise out of § 115/13 of the IWPCA, which provides that any "officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be employers of the employees of the corporation." 820 Ill. Comp. Stat. 115/13.

[6] The IWPCA defines an "employer" as "any individual, partnership, association, corporation, limited liability company, business trust, employment and labor placement agencies where wage payments are made directly or indirectly by the agency or business for work undertaken by employees under hire to a third party pursuant to a contract between the business or agency with the third party," or any "person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed." 820 Ill. Comp. Stat. 115/2.

11

agreement. *Id.* at 86. The defendant, however, was an Ohio resident with no presence in Illinois. *Id.* at 98. Acknowledging its prior holding in *Khan,* the court limited it to *Khan*'s facts, stating, "we left open the possibility that a corporation with no headquarters or physical presence in Illinois can still qualify as an 'employer' under the Wage Act." *Id.* at 99. Then, noting that "today's communications technology permits managers to achieve a virtual presence between states," the court held that physical presence was *not* necessary to make one an "employer" under the IWPCA and found the defendant was an Illinois employer due to the control he exercised over the plaintiff's employer, who was located in Illinois. *Id.* at 99–100.[7]

Considering this backdrop, Defendants' assertion that they cannot be subject to the IWPCA because they are "not located in, citizens, or residents of Illinois" is incorrect. Rather, the Court must consider the extent of Defendants' business and activities conducted on behalf of Chartwell in Illinois to determine whether Chartwell is an employer "in this State." *Elsener*, 996 N.E. 2d at 100. In doing so, the Court considers whether Plaintiff worked in Illinois, whether Chartwell maintains an office in Illinois, and whether it markets and provides its services in Illinois. *See McGreal*, 836 F. Supp. 2d at 740–41 (denying an out-of-state corporation's motion to dismiss an IWPCA claim because plaintiff sufficiently alleged defendant was an Illinois employer, maintained an Illinois office, marketed its services in, and conducted substantial business in Illinois); *Musso v. Excellence in Motivation, Inc.*, No. 10 C 3236, 2010 WL 3385452, at *2 (N.D. Ill. Aug. 24, 2010). (same); *cf. Duberville v. WMG, Inc.*, No. 13 C 02061, 2015 WL

---

[7] Interestingly, the *Elsener* court also cited *Adams v. Catrambone*, 359 F.3d 858 (7th Cir. 2004), for support. In *Adams*, the Seventh Circuit used the reasoning in *Khan* to hold that a non-resident employee who worked in Illinois could maintain a claim under the IWPCA against an in-state employer—the converse of *Khan*. *Id.* at 863. The *Elsener* court interpreted *Adams* to "at least stand[] for the proposition that nonresident employees are not outside the Wage Act's coverage." 996 N.E.2d at 100. "As the *Adams* court found no residency requirement for employees, so we find no residency requirement for employers." *Id.*

12

186834, at *7 (N.D. Ill. Jan. 13, 2015) (holding that a transient rental of a single Illinois office for a single employee was not enough to be considered substantial activity to subject the defendant to the IWPCA); *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC*, No. 11 C 2231, 2012 WL 1886440, at *18 (N.D. Ill. May 22, 2012). (concluding that an out-of-state company that maintained an Illinois office only to accommodate one employee but did not conduct business here could not be considered an "employer" under the IWPCA).

Here, Plaintiff has alleged that he worked out of Chartwell's office in Lombard, Illinois. Am. Compl. ¶ 3. The complaint further indicates that Plaintiff, as Executive Vice President, was tasked with supervising accounts and employees out of the Lombard office. *Id.*; *see id.*, Ex. A. When the Court construes every reasonable inference in Plaintiff's favor, as it must do at this stage, Plaintiff has satisfied his burden to establish that Chartwell conducted substantial business in Illinois and was an employer "in this State" for purposes of the IWPCA.[8]

### B. Schneider-Kidan's Individual Liability under § 115/13

Schneider-Kidan further argues that Plaintiff has failed to adequately allege that she can be individually liable under the IWPCA. Section 115/13 of the IWPCA states that "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation."

---

[8] Defendants cite *DeGeer v. Gillis*, 707 F. Supp. 2d 784 (N.D. Ill. 2010), pointing to language in *DeGeer* that cites *Khan* for the proposition that the IWPCA does not apply to out-of-state employers. Reply at 7 (citing *DeGeer*, 707 F. Supp. 2d at 800). As discussed previously, however, the court in *Khan* specifically stated that it did "not purport to create an all-encompassing definition of 'employers in this State' for purposes of the Wage Act." *Khan*, 756 N.E.2d at 913. What is more, the judge deciding *DeGeer* later explicitly recognized this point, noting that, "[i]n *DeGeer* . . . I had no need to consider, in the context of that case, under what circumstances an entity organized in another state could be deemed an Illinois employer for the purposes of the [IWPCA]." *Musso*, 2010 WL 3385452, at *1. Finally, the *DeGeer* court had no opportunity to consider the Illinois appellate court's later decision in *Elsener*. Accordingly, Defendants' reliance on *DeGeer* is misplaced.

820 Ill. Comp. Stat. 115/13. Plaintiff has alleged that, as a CEO and owner of Chartwell, Schneider-Kidan was involved in day-to-day business operations, including managing payroll accounts, making decisions regarding employee compensation, as well as hiring and firing—including the specific actions on which Plaintiff's claims are based. Am. Compl. ¶ 4. For example, Plaintiff alleges that Kidan and Schneider-Kidan "regularly and repeatedly fail[ed] to properly compensate Plaintiff for all wages owed, including unpaid commissions and profit sharing." *Id.* ¶¶ 16, 23. Additionally, Plaintiff alleges that after he complained about the Defendants' failure to properly compensate him, they both made the decision to terminate Plaintiff in retaliation for the complaint. *Id.* ¶¶ 17–19, 31. These allegations, taken in a light most favorable to the Plaintiff, adequately state a claim that Schneider-Kidan violated § 115/13 of the IWPCA. *See Zwick v. Inteliquent, Inc.*, 83 F. Supp. 3d 804, 812 (N.D. Ill. 2015) (holding that allegations that defendants were officers that advised and affected decisions regarding Plaintiff's severance satisfied § 115/13 at the motion to dismiss stage); *Ziccarelli v. Phillips*, No. 12 CV 9602, 2013 WL 5387864, at *12 (N.D. Ill. Sept. 25, 2013) (finding that plaintiff's allegation that actions taken in violations of the IWPCA required advice or consent of the defendant was sufficient to bring the defendant under § 115/13 and survive a motion to dismiss).

## Conclusion

For the reasons stated herein, Defendants' motion to dismiss [22] is denied.

**IT IS SO ORDERED.**          **ENTERED**    7/6/17

_____

**John Z. Lee**
**United States District Judge**